UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERTO EUGENE FANT, JR., | ) | No. ED CV 12-02041-VBK |
| Plaintiff, | ) ) | MEMORANDUM OPINION AND ORDER |
| v. | ) ) | (Social Security Case) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1.   Whether the Administrative Law Judge ("ALJ") erred in

|   |   |
|---|---|
|   | failing to acknowledge or grant any weight to the mental function assessments of treating psychiatrist, Dr. Kim, consultative examiner Dr. Griffin, or the VA assessment of total mental disability; and |
| 2. | Whether the finding that Plaintiff retains the residual physical capacity to perform a reduced range of light work is based on a legally proper disregard of the opinions of occupational medicine specialist Dr. Guo. |

(JS at 7.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

**I**

**THE ALJ'S ASSESSMENT OF PLAINTIFF'S MENTAL RESIDUAL FUNCTIONAL CAPACITY IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff filed his applications for Disability Insurance Benefits and Supplemental Security Income on February 9, 2007 alleging an onset date of January 4, 1995. After administrative denials, a hearing was held on April 14, 2009 before ALJ Radensky. (AR at 34-79, 180-181.) On July 1, 2009, the ALJ found Plaintiff to be not disabled. (AR 122-130.)

By an Order dated February 18, 2011, the Appeals Council vacated the Decision and remanded the matter. (AR 131-135.) In its Remand Order, the Appeals Council ordered that Plaintiff have a new hearing, and that evidence of his Veterans Administration ("VA") finding of

total disability, the State Agency psychiatric consultant's opinions, and assessments of treating physician Huang be considered. The breadth of the remand order is encompassed in the following language in the Remand Order:

> "To give further consideration to claimant's maximum residual functional capacity during the entire period at issue and provide rationale <u>with specific references to evidence of record in support of assessed limitations ... in so doing, evaluate the treating and non-treating non-source opinions pursuant to the provisions of [applicable regulations and Social Security rulings] and explain the weight given to such opinion evidence."</u> (AR 134, emphasis added.)

The Remand Order resulted in a new hearing on September 16, 2011 before the same ALJ, at which time Plaintiff was represented by a non-attorney representative. (AR 80-114.) Thereafter, in a Decision dated October 21, 2011, the ALJ found Plaintiff to be not disabled. A request for review to the Appeals Council was denied and thus the ALJ's Decision became the final decision of the Commissioner, and resulted in this litigation.

The ALJ found severe impairments as follows: morbidly obese, neck trauma, subjective left sided weakness not confirmed by objective findings, left shoulder impingement, depressive disorder NOS, and post-traumatic stress disorder. (AR 24.) After considering certain evidence (but not all evidence in the record), the ALJ determined a residual functional capacity which, with regard to mental limitations, only restricted Plaintiff to performing moderately complex tasks with

up to 4-5 step instructions. (AR 26.)

Plaintiff's treating psychiatrist, beginning on December 6, 2005, is William Kim of the VA. (AR 495-497.) This record contains chronological treatment notes from Plaintiff's visits to the VA Psychiatric Unit. (See AR 474, 489, 482, 492-493, 496.) Plaintiff characteristically was viewed as suffering from some paranoid thinking during these visits, with anxious mood and affect. (See, e.g., AR 471.) Dr. Kim was treating Plaintiff for post-traumatic stress disorder ("PTSD"), as evidenced in a letter of January 24, 2008. (AR 295.) Plaintiff adhered to a medication and treatment regimen, but Dr. Kim still found him to be very symptomatic and emotionally unstable, suffering from frequent depression and anxiety, becoming easily irritable, angry or fearful and reactive to triggers. (Id.)

On April 14, 2008, Dr. Kim completed a Psychiatric/Psychological Impairment Questionnaire reflecting his treatment of Plaintiff over two years. (AR 505-512.) Various clinical findings and symptoms were noted, and of particular interest is Dr. Kim's assessment on a rating scale from no evidence of limitation, to mildly limited, moderately limited, and markedly limited, in 20 discrete areas. Marked limitations were found in functional areas pertaining to sustained concentration and persistence, social interactions, and adaptation. (Id.) Dr. Kim was of the opinion that Plaintiff would be incapable of tolerating a "low stress" work environment. (AR 510-511.)

In his first Decision, the ALJ rejected, apparently entirely, the assessments of Dr. Kim as "inconsistent with substantial evidence of record." This conclusion was based upon the ALJ's reliance on the testimony of a medical expert ("ME"), Dr. Stolz, and a one-time psychiatric consultative examination ("CE") by Dr. Parikh on August 5,

4

2007. (AR 127-128.)

In the second Decision following remand, the ALJ fails to even mention Dr. Kim, apparently relying upon his evaluation of Dr. Kim's reports from two years before.  The ALJ, however, ignored the fact that Dr. Kim had continued treating Plaintiff, and had rendered an updated Psychiatric/Psychological Impairment Questionnaire on October 7, 2010. (AR 605-612.)  In that Questionnaire, Dr. Kim again found marked limitations in areas involving understanding and memory; marked limitations in several areas concerning sustained concentration and persistence; and marked limitations in several areas involving social interactions. (AR 608-610.)  Dr. Kim assessed that Plaintiff is not a malingerer. (AR 611.)  He again concluded that Plaintiff cannot tolerate even a low-stress work environment. (Id.)

In the Commissioner's portion of the JS, he asserts that the ALJ properly considered Dr. Kim's diagnoses and conclusions. (JS at 17, et seq.)  Again, what is ignored is the fact that the ALJ failed to mention Dr. Kim's treatment and diagnoses in the period subsequent to the issuance of the first Decision.  Moreover, there is no indication in the testimony of the mental health ME at the hearing (AR 89-92) that he even reviewed or considered this evidence.

Plaintiff was also the recipient of a consultative psychological examination by Dr. Griffin on December 8, 2010. (AR 614-619.)  After conducting a clinical interview and administering standardized tests, Dr. Griffin also assessed marked limitations in critical areas (see Discussion of Applicable Law, infra) in Plaintiff's ability to make judgments on simple work-related decisions; interact appropriately with the public; interact appropriately with supervisors; interact appropriately with co-workers; respond appropriately to work pressures

in a usual work setting; and respond appropriately to changes in a routine work setting. (AR 618.) Despite the Commissioner's insistence that Dr. Griffin's conclusions are diluted by some of Plaintiff's activities of daily living, such as attending weekly group meetings for PTSD (see JS at 19), and Dr. Griffin's indication of test results which "may indicate a broad tendency to magnify the level of experience to illness or a characterological inclination to complain or be self-pitying" (AR 617) (which the Commissioner characterizes as "malingering"), the fact is that Dr. Griffin rendered specific findings on critical areas of mental limitations which are highly relevant in the Social Security context to the evaluation of disability. The fact that the ALJ does not even mention Dr. Griffin's report in the Decision renders it unreliable. The Commissioner's invitation to the Court to determine that this omission is harmless error is rejected, in large part because Dr. Griffin's findings corroborate those of Dr. Kim, which that doctor rendered on two occasions, concerning Plaintiff's mental functional limitations. The importance of these assessments is highlighted by the law concerning assessment of mental limitations, which the Court will set out at this point.

   **A.  Applicable Law**.

In evaluating mental impairments, 20 C.F.R. §404.1520a(c)(3)(4) and §416.920a(c)(3)(4) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of decompensation. These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF"). The PRTF is used at Step Three of the

sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two. See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment."[1]

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension. Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior. Reports from workshops, group homes, or similar assistive entities."

---

[1] 20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

7

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ is no longer required to complete and attach a PRTF. The revised regulations identify five discrete categories for the first three of four relevant functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition. These categories are None, Mild, Moderate, Marked, and Extreme. (§404.1520a(c)(3), (4).) In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(e)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

The Step Two and Three analyses (<u>see</u> Decision at AR 53-54) are intended to determine, first, whether a claimant has a severe mental impairment (Step Two), and if so, whether it meets or equals any of the Listings (Step Three). It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the

mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

These findings and conclusions are relevant to the Step Two and Three analysis of whether a claimant has a severe mental impairment, and if so, whether it meets or equals any of the Listings. (See 20 C.F.R. Part 4, subpart p, App. 1.) The discussion in Listing 12.00, "Mental Disorders," is relevant:

> "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorders described in the diagnostic description, that is manifested by the medical findings in paragraph A.
>
> In Listing 12.00C, entitled 'Assessment of Severity,' it is stated that, 'we assess functional limitations using the four criteria in paragraph B of the Listings: Activities of daily living; social functioning; concentration; persistence, or pace; and episodes of decompensation. Where we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme."

Social Security Ruling ("SSR") 96-8p makes the same point in distinguishing evidence supporting a rating of mental severity at Step

9

Two, a Listing level impairment at Step Three, and the determination of an individual's MRFC at Step Four.

In addition to the foregoing deficiencies in the ALJ's evaluation of the mental health evidence, although the VA assessed that Plaintiff is 100% disabled, in his Decision, based on the testimony of the mental health ME at the hearing, the ALJ interpreted the VA evidence as demonstrating that "the VA treatment notes show no cognitive problems, generally stable to normal mental status exams, and so the VA rating is given little weight." (AR 28.)  For reasons which have already been discussed, the Court rejects this characterization of the VA mental health treatment notes and diagnoses, which in fact do not indicate a stable or unremarkable mental condition. Moreover, the ALJ failed to discharge the instructions of the Appeals Council to evaluate the VA disability rating as it applies to the Social Security context.  The Ninth Circuit has clearly held that a VA rating of disability, while it does not necessarily compel the Social Security Administration to reach an identical conclusion, must be given great weight by an ALJ in the disability determination process. See McLeod v. Astrue, 640 F.3d 881, 886 (9th Cir. 2011).

The Court will not devote substantial attention to Issue Two, which concerns the assessment as to Plaintiff's RFC in the physical arena.  Since this matter will be remanded for a new hearing, this evidence will be reevaluated, and if necessary, new evidence will be adduced to make a determination of this issue.

In remanding this matter, the Court will take the rare step of ordering that it be assigned to a new ALJ.  The Court does not have confidence that the present ALJ will give a fair and neutral evaluation to the evidence, in view of the nature of the deficiencies

which occurred on remand.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: August 5, 2013  /s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE